THOMAS, Justice.
Upon motions of the appellees, State Road Department, Dade County, and Central and Southern Florida Flood Control1 District the appellants’ bill of complaint and its several amendments were dismissed. . We go now to these pleadings to ascertain the factual situation which they insist formed a sound basis for the relief they sought.
The appellants own a tract of land in. Dade County abutting State Road No. S which extends from northeast to southwest. The property is bounded on the north by Snapper Creek which flows in an easterly-westerly direction. The county acting for the Department started a condemnation action in 1953 to procure a strip of appellants’ land to widen the highway on the easterly side. As a part of the plan of improvement it was proposed to build a bridge 66 feet in length and of sufficient width to take the broadened highway across Snapper Creek as it then existed. The appellants alleged that they relied upon these plans as they negotiated with “the Dade County Engineering Department” relative to the compensation they would accept for a strip of their land 50 feet in width which was needed for the improvement. The parties agreed upon the amount appellants were to receive and it was embedded in the verdict rendered and the judgment entered in the action in eminent domain and, so it was averred, “no award was made for damages to remaining adjacent property” of the appellants. After the entry of the judgment, appellants alleged, the appellees, or one of them, altered the specifications of the bridge so that it would extend 67 feet farther along appellants’ property. Furthermore, said the *742 appellants, the revised plans provided for a rail on the easterly side of the bridge, in front of their property, for an additional distance of 55 feet.
All these changes, complained the appellants, resulted in reducing the frontage of their property accessible to the highway from 260 to about 100 feet. They claim they were misled as the basis on which they agreed to accept a certain compensation was completely undermined, and that they have suffered a great loss for which they have not been compensated.
These representations were followed by specific statements of the appellants about the effect upon their business of the curtailment of ingress and egress resulting from the revision'of the original plans.
The appellants capped their allegations with the assertion that they had “never been given an opportunity” to press their claim and had “never * * * consented” to the extension of the bridge and “banister” which had so materially damaged their remaining land.
The appellants prayed for a decree restraining further obstruction, a mandatory injunction to remove the rail, and a decree for the damage which was not contemplated when the agreement for compensation was reached.
This is a précis of the original bill in which the name of Central and Southern Florida Flood Control District did not appear as a defendant.
In a subsequent amendment the District was simply named as a defendant and in a final amendment the pleaders elaborated on its position in the controversy. It was then averred that the District in April 1955, about two years after the one by the county, instituted a condemnation action to acquire title to the “North one hundred and seven feet” of the property of the appellants, which we understand, by examining the other allegations of the bill of complaint, to mean the northernmost 107 feet extending southwesterly along the highway. This tract was claimed to have been depreciated in value by reason of the construction of the bridge prior to the taking, and the appellants asserted that they were compensated on the basis of the later, lower value.
The chancellor questioned the right of the appellants to damage resulting from the eventual use of the property taken in the condemnation proceeding by the county and thought the case should “be considered by taking the situation as it was after the condemnation proceedings, and what transpired there [was] of no present consequence.” To support his conclusion he cited the decision of this court in Weir v. Palm Beach County, Fla., 85 So.2d 865, 869, in which it was held that an owner of property adjoining a highway had a right of ingress and egress and to “enjoy the view” from his property, but that these rights were subordinate to the underlying right of the public to improve the way for the sake of public convenience and necessity. The court observed that one who acquires land abutting a highway takes it subject to the right of the public to improve the road for the public good.
As we understand the position of the appellee-county it is apparent from the allegations of the bill and amendments that the extension of the bridge was necessitated by the widening of the Snapper Creek Canal, an operation evidently under the jurisdiction of appellee-District, while the low elevation of appellants’ land required the construction of the guard rail, and this appellee frankly states that there was a change in plan but the combined situations were responsible for it.
We first got the impression, from a study of the original bill of complaint, that appellants were aggrieved because they had been shown a set of plans and specifications that indicated they would have frontage of about 260 feet on the widened highway; that they had agreed to a price for the 50-foot strip believing their frontage would be of that length; and that later the plans were *743 so amended as to reduce the 260 feet to a little more than 100 feet. This was a relatively simple situation that, frankly, appealed to our sense of equity.
Upon close study of the amendments, however, introducing the appellee-District into the case, we find allegations of facts to support a theory that is substantially and materially different. True, the original agreement was made at a time when, according to the plans, the property of the appellants was to extend along the highway the greater distance. But two years later, after conclusion of the condemnation suit by the county, the District brought its suit to condemn part of the lands of the appellants so that Snapper Creek could be widened at the place where the highway crossed it. Plainly this operation required a longer bridge.
It is appellants’ theory that in the second suit, by the District, they were not justly compensated because the value of their land had been depressed by the change of plans and this depreciated value was the basis for compensation. Whether or not the appellants attempted to raise this matter in the second action we cannot determine from the bill of complaint and amendments in the present case, nor can we tell from the record before us whether or not an appeal was taken from the judgment in the later action.
We cannot determine from the record just when the change of the original plans was made necessary so that a longer bridge would be constructed to accommodate traffic across Snapper Creek when widened but this occurred after the county action and before the District action. In any event it was the very taking in the later action which reduced the frontage on the highway by 107 feet.
In our effort to follow appellants in the presentation of their theory, we reach the view that the matter is not one of deceit which misled them at the time they agreed with the county on a price at the beginning of the county’s action to condemn but one involving the amount of compensation fixed two years later in the District’s action. If they were dissatisfied with the judgment last entered, they could have challenged it in an appeal.
We agree with the chancellor that the bill of complaint and the amendments did not contain allegations which, if proved, would justify the relief the appellants sought.
Affirmed.
TERRELL, C. J., and HOBSON, ROBERTS and DREW, JJ., concur.